IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VICKI DORROUGH, as special administrator of the ESTATE OF MATTHEW DORROUGH, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL COREY, RAVEN MOORE, ROBERT BENOIT, TRACY HARSHMAN, JULIE IZZOLENA, DORIS HARRIS-NETTLES, and JOHN DOES 1-99,<br><br>Defendants. | Case No. CIV-15-143-D |

# **O R D E R**

Before the Court is Defendants Corey, Moore, Benoit, Harshman, Izzolena, and Harris-Nettles' Motion to Dismiss [Doc. No. 23]. All named defendants move for dismissal of the action pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff Vickie Dorrough, as special administrator of the Estate of Matthew Dorrough, deceased, has filed a response brief [Doc. No. 24] in opposition to the Motion, and Defendants have replied [Doc. No. 25].

This civil rights action under 42 U.S.C. § 1983 concerns the death of Matthew Dorrough on February 21, 2012, at the hands of his cell mate at the Lawton Correctional Facility ("LCF"), which is a private prison housing inmates in custody of the Oklahoma Department of Corrections ("DOC"). The defendants are individuals who worked at LCF and allegedly played some part in causing Mr. Dorrough's injuries and death. This is

Plaintiff's second suit concerning the events of February 21, 2012. Plaintiff filed a wrongful death action in the District Court of Comanche County, Oklahoma, on February 8, 2013, against the perpetrator, Joseph Palone. Plaintiff added the operator of LCF, The GEO Group, Inc. ("GEO"), as a defendant in June 2013, and added a § 1983 claim against GEO in November 2014, which led GEO to remove the case to federal court. *See Dorrough v. GEO Group, Inc.*, Case No. 14-1389-D, Notice of Removal (W.D. Okla. Dec. 16, 2014).[1]

Plaintiff commenced this action on February 6, 2015, asserting civil rights claims under 42 U.S.C. § 1983 and state constitutional claims under *Bosh v. Cherokee County Building Authority*, 305 P.3d 994 (Okla. 2013).[2] Defendants contend Plaintiff's claims are time barred by the applicable statutes of limitations and, as to certain claims, that the allegations of the Complaint fail to state a plausible claim on which relief can be granted.

## Standard of Decision

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008).

---

[1] GEO also moved to dismiss the action, and raised some of the same grounds for dismissal asserted in this case. Contemporaneously with this Order, the Court has issued a ruling on GEO's motion.

[2] In *Bosh*, the Oklahoma Supreme Court recognized a private right of action for excessive force derived from Article II, Section 30 of the Oklahoma Constitution, notwithstanding the requirements of the Governmental Tort Claims Act, Okla. Stat. tit. 51, §§ 151-172. *See Bosh*, 305 P.3d at 1001. The court also held that its decision would apply retroactively and the common law doctrine of *respondeat superior* could be used to establish municipal liability for excessive force by a municipal employee. *See id.* at 1003, 1004.

2

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, in assessing plausibility, a court should first disregard conclusory allegations and "next consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id*. at 681.

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See id*. at 679; *see also Robbins*, 519 F.3d at 1248. "In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her . . . ." *See Robbins*, 519 F.3d at 1249-50 (emphasis in original); *see also Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009).

"'[I]f the allegations [of a complaint] show that relief is barred by the applicable statutes of limitations, the complaint is subject to dismissal for failure to state a claim.'" *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1096-97 (10th Cir. 2009) (quoting *Jones v. Bock*,

549 U.S. 199, 215 (2007)). Further, "any party claiming the benefit of equitable tolling of a limitations period . . . [bears] the burden of [pleading and] proving justifiable circumstances." *Olson v. Fed. Mine Safety & Health Review Comm'n*, 381 F.3d 1007, 1014 (10th Cir. 2004)); *see Aldrich v. McCulloch Prop., Inc.*, 627 F.2d 1036, 1044 n.4 (10th Cir. 1980).[3]

## I. Plaintiff's Civil Rights Action

Although numerous issues are raised by the Motion, the Court first addresses the alleged grounds for dismissal of Plaintiff's § 1983 claims, which are the only claims within this Court's original jurisdiction.[4]

### A. Statute of Limitations

The parties agree that the statute of limitations for a § 1983 claim, which is borrowed from state law, is the two-year period of Okla. Stat. tit. 12, § 95(A)(3). *See Meade v. Grubbs*, 841 F.2d 1512, 1522-24 (10th Cir. 1988); *see also Wilson v. Garcia*, 471 U.S. 261, 280 (1985). They also agree that federal law governs issues related to the accrual of a § 1983 claim. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law")

---

[3] Plaintiff asserts that the § 1983 claims were timely filed either due to a delayed accrual date under a federal discovery doctrine or tolling of the limitations period under a state law discovery doctrine. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir. 2004) ("state law governs the application of tolling in a civil rights action," and Oklahoma law recognizes the discovery rule as a tolling doctrine).

[4] "If federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of [supplemental] jurisdiction.'" *See Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), and *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010); 28 U.S.C. § 1367(c)(3).

(emphasis omitted). The parties disagree on when Plaintiff's claims accrued. Plaintiff proposes a date in February 2013 when she first obtained a copy of a confidential investigative report prepared by DOC's Office of Internal Affairs (the "IA Report") regarding Mr. Dorrough's death. Plaintiff received the IA Report from the Comanche County District Attorney's Office in response to a subpoena issued when filing suit against Mr. Palone. Accepting this date, Plaintiff's § 1983 action was timely filed in February 2015.

To establish the proposed date for accrual of the § 1983 claims, Plaintiff invokes the federal discovery rule. The Tenth Circuit has summarized the applicable legal principles as follows:

> In general, under the federal discovery rule, claims accrue and "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). In particular, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) (internal quotations omitted).

*Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004). The court of appeals has also observed: "Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated. This requires the court to identify the constitutional violation and locate it in time." *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (internal quotations and citations omitted). Plaintiff's § 1983 claims in this case are based on alleged violations of Mr. Dorrough's Eighth Amendment rights: 1) to "reasonable safety" from inmate

5

violence, *Farmer v. Brennan*, 511 U.S. 825, 844 (1994); 2) to treatment of serious medical need (by Defendants Corey and Moore only), *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976); and 3) to be free from a use of excessive force "applied maliciously and sadistically to cause harm" (by Defendants Corey and Moore only), *see Hudson v. McMillian*, 503 U.S. 1, 7 (1992).[5]

It would appear that any of the alleged constitutional violations occurred, and thus a § 1983 claim accrued, on the date Mr. Dorrough was attacked and died. Plaintiff asserts, however, and alleges facts in her Complaint to show, that "she remained completely unaware and without knowledge of the actions/inactions of LCF and its employees relative to the Incident" and first learned "the identity of any of the individual Defendants and the role they played in the death" when she received the IA Report. *See* Pl.'s Resp. Br. [Doc. No. 24], p.5; Compl. [Doc. No. 1], ¶ 8. Challenging the position taken by Defendants in support of their Motion, Plaintiff argues that the "proper focus for determining the accrual of the § 1983 claims" is her personal knowledge of the factual circumstances of Mr. Dorrough's death, rather than Mr. Dorrough's knowledge of Defendants' conduct and identities. *See* Pl.'s Resp. Br. [Doc. No. 24], p.8. Plaintiff admits she retained counsel "to evaluate her potential claims concerning the death" of Mr. Dorrough, and on March 30, 2012, the attorneys "sent LCF a letter putting it on notice of Plaintiff's intent to sue for the wrongful death." *See* Compl.

---

[5] The substantive right enforceable under § 1983 is an individual right of the decedent, which may be prosecuted in "a survival action, brought by the estate of the deceased victim, in accord with § 1983's express statement that the liability is 'to the party injured.'" *See Berry v. City of Muskogee*, 900 F.2d 1489, 1504-05, 1506-07 (10th Cir. 1990) (quoting 42 U.S.C. § 1983).

[Doc. No. 1], ¶¶ 6-7. But Plaintiff maintains that the facts known to her at that time were insufficient "to assert any claims against any unknown employees of LCF under the current federal pleading standards" and, therefore, were not "sufficient to trigger the running of the statute of limitations" for § 1983 claims regarding Mr. Dorrough's death. *See* Pl.'s Resp. Br. [Doc. No. 24], pp.10-11 (quoting Compl., ¶ 8).

The Court is not persuaded by these arguments. Although the parties have not cited binding precedent for their respective positions regarding the accrual of the § 1983 claims asserted, and the Court is aware of none, independent legal research has uncovered helpful case law. In *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1276 (10th Cir. 2014), the Tenth Circuit considered whether to apply "the injury-occurrence rule" or "the injury-discovery rule" to a claim under the federal Racketeer Influenced and Corrupt Organizations (RICO) statute. Because RICO "does not provide an accrual rule" (*id.*), the court considered case law from other circuits and its own precedents regarding claims under the Federal Tort Claims Act, which also does not mandate a particular rule. In the end, the court did not decide the question because it concluded the plaintiff's RICO claims were time-barred under either rule. *Id.* at 1277. The rationale for that conclusion is instructive in assessing Plaintiff's argument that the § 1983 claims in this case did not accrue until "a reasonable period of time after she received the DOC IA Report." *See* Pl.'s Resp. Br. [Doc. No. 24], pp.10-11.

In *Kirchhefer*, a business owner that operated a beer distributorship sued to recover damages for monetary losses caused by a salesman's theft of beer and resale of the stolen beer to competitors. The thefts began in 2005 and were finally uncovered in 2007; the action was filed in 2011. The defendants asserted that the claims were barred by RICO's four-year statute of limitations. The district court and the Tenth Circuit agreed. The court of appeals reasoned that the plaintiff's RICO injury was harm from predicate acts of wire fraud – that is, accounting losses resulting from the beer thefts – and the injury was discovered when the business owner learned of the losses, not when a manager later determined "*who* ha[d] committed the harm" or discovered "the other elements of the RICO claim." *Id*. at 1278 (emphasis in original). The plaintiff argued that its injury could not have been discovered until the losses were traced to the salesman because "a plaintiff cannot be expected to file a lawsuit if he is unaware who actually injured him." *Id*. at 1279. The court of appeals rejected this argument:

> The point of the injury-discovery rule is to start the clock ticking on the period in which a reasonably diligent person would determine the essential elements of a claim; the rule does not obligate the victim to file suit at that moment. . . .
>
> Here, once [the managers] were aware that one of several individuals – one of several beer distributors or an employee – could be the cause of their injury, they had four years to determine the proper person against whom to file suit. Contrary to [the plaintiff's] claims, [the managers] need not have definitely determined which individual of the many possible candidates was in fact responsible for their injury before their claims could accrue. Rather, their RICO claim accrued once they became aware of the injury to their business – theft of [the distributorship's] beer.

*Id*.

The court of appeals further found that under a proper application of the injury-discovery rule, the plaintiff had "inquiry notice" sufficient to trigger the statute of limitations in 2005. "[A] plaintiff is on inquiry notice whenever circumstances exist that would lead a reasonable [plaintiff] of ordinary intelligence, through the exercise of reasonable due diligence, to discover his or her injury." *Id*. at 1280 (internal quotation omitted). The plaintiff in *Kirchhefer* failed to show reasonable diligence because a manager was aware of the accounting losses due to significant discrepancies in beer purchases and sales in 2005 and "the losses were not due to seasonal variations and there was a possibility of distributor theft," but the manager failed to undertake any investigation to determine the cause of the loss at that time. *Id*. at 1280-81.

Similarly here, the fact that Plaintiff did not know in 2012 the identities of the individuals who allegedly violated Mr. Dorrough's constitutional rights or the role they allegedly played in causing his death, does not necessarily mean the injury-discovery rule was not triggered. Her knowledge that Mr. Dorrough died as a result of an attack by his cell mate at LCF put her on notice of the harm – that prison officials had failed to protect Mr. Dorrough's safety and had failed to treat a serious medical need. The known facts about Mr. Dorrough's injuries and death were sufficient to lead a reasonable person to investigate whether wrongful conduct by LCF or its employees had violated his constitutional rights.[6]

---

[6] The Court is not convinced by Defendants' argument that the discovery rule can have no application because the accrual of Mr. Dorrough's § 1983 claims must be judged from his perspective and he necessarily knew the underlying facts because he was present. The factual allegations of the Complaint largely concern Defendants' interactions with Mr. Dorrough's attacker and the failure of the guards on duty

(continued...)

Unlike the plaintiff in *Kirchhefer*, however, Plaintiff claims she took prompt action to investigate the cause of Mr. Dorrough's death – by hiring a law firm to perform an investigation and by meeting with a legislator to seek assistance in obtaining information when the law firm was unsuccessful. Defendants contend Plaintiff's factual allegations are insufficient to show she exercised reasonable diligence to discover the alleged constitutional violations and there were avenues for obtaining information she apparently failed to use, such as an open records request to DOC for copies of incident reports or other documents concerning Mr. Dorrough's death. Plaintiff apparently learned sometime before February 8, 2013, of the existence of the IA Report because her attorneys issued a subpoena to the Comanche County District Attorney's Office on that date to produce a copy of it.

The Court finds, however, that the issue of whether Plaintiff had "inquiry notice" of the § 1983 claims sufficient for accrual of the claims before February 2013 (so they were time barred when this suit was filed in February 2015) is inappropriate for resolution under Rule 12(b)(6). It is well settled "that the issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact." *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985). Plaintiff has alleged in the Complaint a minimally sufficient factual basis from which to conclude that she was prevented from learning in the months immediately following Mr. Dorrough's death the necessary facts to

---

[6](...continued)
(Defendants Corey and Moore) to respond to calls for help during the attack. Although Mr. Dorrough may have been aware of many of the alleged events, it is equally possible some of the prison employees' actions or inactions that allegedly violated Mr. Dorrough's constitutional rights were not known to him either.

determine whether his Eighth Amendment rights were violated. The confidential treatment given to the facts surrounding Mr. Dorrough's death are shown by the IA Report itself.[7] The Court cannot say that Plaintiff's 1983 claims are time barred as a matter of law.

For these reasons, the Court finds that Plaintiff's § 1983 claims should not be dismissed for failure to state a claim upon which relief can be granted within the applicable statute of limitations.

**B.     Sufficiency of the Alleged Facts to State a Plausible § 1983 Claim**[8]

Defendants assert that the factual allegations of the Complaint are insufficient to support an Eighth Amendment claim of excessive force or a claim of deliberate indifference to serious medical needs. They contend the excessive force claim fails because a use of force by a governmental actor is required and Plaintiff has not alleged that any defendant used force against Mr. Dorrough; the only force was applied by another inmate. Defendants claim Plaintiff is attempting recast a failure-to-protect claim as an excessive force claim, and argue they are "unaware of any [legal] authority whatsoever which would support the proposition that a governmental officer may by held liable for the use of 'excessive force' by a non-governmental actor." *See* Defs.' Mot. Dismiss [Doc. No. 23], p.15. Similarly, Defendants

---

[7] The cover page of the IA Report describes the highly confidential nature of the document, and this description can properly be considered under Rule 12(b)(6) because the document was attached to the Second Amended Petition. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference.") (citations omitted).

[8] The Complaint does not identify § 1983 as the basis of a claim for damages for the alleged Eighth Amendment violations asserted in the Third and Fourth Claims for Relief against Defendants Corey and Moore. Plaintiff argues in her brief, however, that the Complaint states a § 1983 claim for each of these federal constitutional violations. *See* Pl.'s Resp. Br. [Doc. No. 24], p.15 n.1 & p.17.

argue that Plaintiff's factual allegations show the only medical need of Mr. Dorrough arose after he was attacked in his cell and that Defendants Corey and Moore did not become aware of the need until they later found him unresponsive.

Plaintiff makes no persuasive response to these arguments. Regarding excessive force, Plaintiff argues only that an individual may be held liable for another's constitutional violation if the individual's conduct is the "moving force" behind the violation, citing *Berry v. City of Muskogee*, 900 F.2d 1489,1499 (10th Cir. 1990). *See* Pl.'s Resp. Br. [Doc. No. 24], p.12. *Berry* did not involve an excessive force claim, and has no bearing on the question of whether a state actor may be held liable for a private individual's use of force. It is not inconceivable that a prison guard might deliberately incite inmate violence in a manner designed to cause harm and so be found to have violated the Eighth Amendment standard applicable to an excessive force claim. *See*, *e.g.*, *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003); *see also Porro v. Barnes*, 624 F.3d 1322, 1325-36 (10th Cir. 2010) (discussing different legal tests applied to excessive force claims "depending on where the [injured person] finds himself in the criminal justice system"). In this case, however, Plaintiff does not acknowledge the Eighth Amendment standard for determining a use of excessive force – that is, force applied maliciously and sadistically to cause harm – nor point to any allegations of the Complaint that might satisfy the standard with regard to the conduct of Defendants Corey and Moore. Therefore, the Court finds that Plaintiff has failed to state a plausible § 1983 claim of excessive force.

Regarding deliberate indifference to a serious medical need, Plaintiff relies on allegations of the Complaint that Defendants Corey and Moore were aware Mr. Palone's attack on Mr. Dorrough but failed to respond. *See* Pl.'s Resp. Br. [Doc. No. 24], pp.13-14. In so doing, Plaintiff equates knowledge of the attack with knowledge of a serious medical need. *See id*. p.14 (quoting Compl. ¶ 135). The law is clear, however, that the subjective component of the deliberate indifference standard "requires the prison official to disregard the risk of harm claimed by the prisoner." *See Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009). As to Mr. Dorrough's medical need, the claimed harm is his death from the physical injuries inflicted by Mr. Palone. To establish deliberate indifference, Plaintiff must show that Defendants Corey and Moore knew of and disregarded an excessive risk to Mr. Dorrough, which required that they "'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [they] must also draw the inference.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In satisfying the subjective component, "the symptoms displayed by the prisoner are relevant," and "[t]he question is: 'were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?'" *Id*. (quoting *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005)).

Plaintiff does not allege any facts from which to conclude that Defendants Corey and Moore knew the extent of Mr. Dorrough's physical injuries or symptoms requiring medical

13

treatment until they first observed his unresponsive condition after the attack.[9] This allegedly occurred when Defendants Corey and Moore were making a routine check of inmates' cells at approximately 7:46 p.m.; Mr. Dorrough was pronounced dead at 8:06 p.m. *See* Compl. [Doc. No. 1], ¶¶ 2, 87-88. Plaintiff does not explain how a failure to obtain medical care during this 20-minute interval constituted deliberate indifference to a serious medical need. Accepting the factual allegations of the Complaint, the Court finds that Plaintiff has failed to state a plausible claim that Defendants Corey and Moore may be held liable under § 1983 based on their deliberate indifference to a serious medical need.

## C. Conclusion Regarding Plaintiff's § 1983 Claims

For these reasons, the Court finds that Plaintiff has stated a plausible § 1983 claim based solely on Defendants' alleged failure to protect Mr. Dorrough from a substantial risk of attack by Mr. Palone.

## II. Plaintiff's State Constitutional Claims

Defendants assert that the Complaint fails to state a *Bosh* claim for a violation of the Oklahoma Constitution because the underlying facts of *Bosh* are distinguishable from the alleged facts of this case. Further, Defendants assert that any *Bosh* claim is time barred by the one-year statute of limitations of Okla. Stat. tit. 12, § 95(A)(11). They argue that even if Plaintiff's claims against them accrued in February 2013, the claims were time barred

---

[9] Plaintiff specifically alleges that during the attack, Defendants Corey and Moore did not perceive that a serious altercation was occurring; instead, they allegedly "laughed about the fight and Defendant Corey even called it 'the fakest fight ever.'" *See* Compl. [Doc. No. 1], ¶ 79; *see also id.*, ¶ 135.

14

before this case was filed in February 2015. Plaintiff contends § 95(A)(11) is inapplicable to her claims.[10]

Oklahoma's general statute of limitations provides, in pertinent part, as follows:

A. Civil actions other than recovery of real property can only be brought within the following period, after the cause of action shall have accrued, and not afterwards:

  *  *  *

11. All <u>actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate</u> in the custody of one of the following:

 a. the State of Oklahoma,

 b. a contractor of the State of Oklahoma, or

 c. a political subdivision of the State of Oklahoma,

to include, but not be limited to, the revocation of earned credits and claims for injury to the rights of another, shall be commenced within one (1) year after the cause of action shall have accrued . . . .

Okla. Stat. tit. 12, § 95(A) (emphasis added). Under Plaintiff's reading of the statute, § 95(A)(11) does not apply because this action was not filed by an inmate or by "a person based on facts that occurred while the person was an inmate." She argues that the suit concerns an occurrence while Mr. Dorrough was an inmate but he is not the person filing suit. She points to a paucity of reported cases that have applied the statute to claims brought by the estate of a deceased inmate or a personal representative of the estate.

---

[10] Plaintiff concedes that, otherwise, her state constitutional claims under *Bosh* are time barred. *See* Pl.'s Resp. Br. [Doc. No. 24], p.17 (stating that if § 95(11) applies, it would not affect the federal law claims under § 1983).

15

The Court's legal research reveals that § 95(A)(11) has largely been applied in cases where the plaintiff was an inmate or a former inmate. In one unpublished decision, a federal district court applied the statute to *Bosh* claims brought by a guardian of a former inmate who suffered serious injuries due to a lack of medical treatment in a county jail. *See Dubois v. Bd. of Cty. Comm'rs*, Case No. 12-CV-677-JED-PJC, 2016 WL 1091099, *12 (N.D. Okla. March 21, 2016). There were relatively few occasions to utilize § 95(A)(11) at all, however, before the Oklahoma Supreme Court in *Bosh* recognized a private right of action that was not subject to the requirements and limitations of the GTCA.[11] The Court finds that a common sense reading of the statute encompasses actions filed "by a person [a decedent's estate] based upon facts that occurred while the person [the decedent] was an inmate in the custody" of the State of Oklahoma.[12]

Further, the Court is persuaded by Defendants' argument that a *Bosh* claim brought by a decedent's estate is a survival action "subject the statute of limitations that would have been binding on the decedent had he lived." *See* Defs.' Reply Br. [Doc. No. 25], p.10 (citing *Kimberly v. DeWitt*, 606 P.2d 612, 615-16 (Okla. Civ. App. 1980)). Under Oklahoma law, like federal law, a party generally cannot assert the constitutional rights of others; where the law authorizes one person to sue for a violation of another person's right, such as a parent

---

[11] The Oklahoma Supreme Court has held that "where the GTCA includes specific provisions, the general statute of limitations does not apply." *Hall v. GEO Group, Inc.*, 324 P.3d 399, 405 (Okla. 2014).

[12] Under Oklahoma law, "the primary goal of statutory interpretation is to ascertain and follow the Legislature's intention. '[T]he plain meaning of a statute's language is conclusive except in the rare case when literal construction produces a result demonstrably at odds with legislative intent.'" *Duncan v. Okla. Dep't of Corr.*, 95 P.3d 1076, 1079 (Okla. 2004) (citations omitted; quoting *Samman v. Multiple Injury Trust Fund*, 33 P.3d 302, 307 (Okla. 2001)); *see also Ledbetter v. Howard*, 276 P.3d 1031, 1035 (Okla. 2012).

suing on behalf of a minor child, "the [parent] steps into [the child's] shoes for all purposes." *See Gens v. Casady Sch.*, 177 P.3d 565, 571 & n.28 (Okla. 2008). Plaintiff, acting as the personal representative of Mr. Dorrough's estate to bring constitutional claims on his behalf, cannot escape the statute of limitations that would otherwise apply to his claims.

Therefore, the Court finds that the state constitutional claims that Plaintiff seeks to assert under *Bosh* are time barred by operation of § 95(A)(11).

## Conclusion

For these reasons, the Court finds that the Complaint fails to state a plausible claim on which relief can be granted, except Plaintiff's § 1983 claims against Defendants alleging a violation of Mr. Dorrough's Eighth Amendment right to protection from inmate violence.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss [Doc. No. 23] is GRANTED in part and DENIED in part, as set forth herein.

IT IS FURTHER ORDERED that Plaintiff shall show cause within 14 days from the date of this Order why the unidentified defendants, named as "John Does 1-99," should not be dismissed pursuant to Fed. R. Civ. P. 4(m) for failure to effect timely service of process.

IT IS SO ORDERED this 12th day of July, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE